BENTON, C.J.
Leo Gregory Horne appeals a “No Contact Order” entered against him on Pamela Endres’s Petition for Injunction Against Repeat Violence under section 784.046(2), Florida Statutes (2009). Her petition alleged two incidents of “violence” in which Mr. Horne “confronted” her and “made threats.” After entering a temporary injunction under the statute, and conducting an evidentiary hearing — duly noticed as being for the purpose of deciding whether a permanent injunction should issue under the statute — the trial court entered the no contact order under review. We reverse. Neither section 784.046(2) nor any other statute authorizes the no contact order, and even courts of general jurisdiction are without plenary power to enjoin citizens to remain on good behavior.
The no contact order appears to recognize that proof of the parties’ interactions fell short of a showing that would warrant an injunction against repeat violence under section 784.046(2), Florida Statutes (2009).[1] Ms. Endres did not prove a single instance of “violence” within *430 the meaning of section 784.046(l)(a).[2] At most, Mr. Horne’s actions during the two incidents at issue were alleged to have constituted assault, “an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent,” § 784.011(1), Fla. Stat. (2009), or battery — which occurs when a person “[a]ctually and intentionally touches or strikes another person against the will of the other” or “[i]ntentionally causes bodily harm to another person.” § 784.03(l)(a), Fla. Stat. (2009).
The trial court made no findings— and the record would not support a finding — that Mr. Horne either threatened to do Ms. Endres violence or that he intentionally touched or harmed her during the first incident. As to the second incident— events at the school — the trial court made factual findings that Mr. Horne slammed doors and slammed down a book bag, and that the principal was sufficiently concerned that he summoned a school resource officer. But the record reflects that the slamming behavior occurred outside Ms. Endres’s presence, and that she did not even know about it at the time.
To be sure, the record also supports the trial court’s findings that Mr. Horne said to Ms. Endres, “[Y]ou’re going to have charges coming your way,” and “[Y]ou don’t know who you’re messing with,” and that he told his wife, “[Y]ou should have taken care of her.” But these statements were not accompanied by any act that would create a reasonable fear that violence was imminent, and neither statement threatens violence, even implicitly. See Russell v. Doughty, 28 So.3d 169, 170 (Fla. 1st DCA 2010) (reversing injunction against repeat violence where testimony established that respondent yelled profanities and threats at petitioners, but that there was no indication that respondent “threatened to do violence, or that he took some action that could have created a well-founded fear that violence was imminent”). See also Perez v. Siegel, 857 So.2d 353, 355 (Fla. 3d DCA 2003) (reversing injunction against repeat violence where respondent threatened to kill petitioner and her family but without any apparent ability to do so, *431 and committed no overt act creating a well-founded fear of violence).
The trial court entered the “No Contact Order,” in lieu of an injunction under the statute, “so that hopefully [Mr. Horne] can maintain his employment[3] and receive the treatment that will serve him, his family, the public and restore the ability to become a quality officer.” See generally Weiand v. State, 732 So.2d 1044, 1055 n. 11 (Fla.1999) (“In addition, pursuant to 18 U.S.C.A. § 922 (West Supp.1998), it is unlawful for any person under a restraining order to transport, possess, or receive in interstate commerce any firearms or ammunition.”); Boyles v. Tiefenthaler, 810 So.2d 1041, 1041 (Fla. 2d DCA 2002). The no contact order, which was to remain in effect until further order of the trial court, directs Mr. Horne to “refrain from committing or causing any act or threat of violence against” Ms. Endres; to have no contact in any manner with Ms. Endres; and not to go within 500 feet of her, her residence, her place of employment, or her car.[4]
As seems to have been intended, the trial court’s no contact order has much the same effect as an injunction of the kind section 784.046(2) authorizes. Implementing the statute, the supreme court has approved Form 12.980(0 for use in the issuance of permanent injunctions against repeat violence under chapter 784. See Fla. Fam. L.R.P. 12.610(c)(2)(A). The standard Form 12.980(Z) injunction prohibits the respondent from committing acts of violence against the petitioner, prohibits the respondent from having any contact with the petitioner, and from going within 500 feet of the petitioner’s current residence, place of employment, school, or other requested places. See Fla. Fam. L.R.P. Form 12.980(Z). The no contact order entered in the present case contains nearly identical prohibitions.
In the absence of proof of the statutory prerequisites, however, we are unable to affirm the no contact order, as being in effect an injunction against repeat violence. Nor are we aware of any other statutory authority for the no contact order. See, e.g., Polanco v. Cordeiro, — So.3d-, -, 2010 WL 3655514 (Fla. 2d DCA 2010) (Villanti, J., concurring) (“[N]owhere in the statutory catalog of improper behavior is there a provision for court-ordered relief against uncivil behavior occurring at work or church, which was the crux of Mrs. Cordeiro’s complaint.”).
Ms. Endres argues for affir-mance on a “tipsy coachman” theory, see generally Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999), contending that the trial court could have entered the no contact order as a remedy within the power of a court of equity to fashion. We do not agree that Florida’s courts have such sweeping powers. In general, equity will not enjoin even criminal violations, as such. See Steinfink v. Radish, 638 So.2d 79, 79 (Fla. 3d DCA 1993) (reversing injunction against repeat violence and stating that “[s]ince equity has no non-statutory ‘jurisdiction to enjoin the commission of crime, nor will equity act to prevent an illegal act *432 merely because it is illegal,’ there is no alternative basis to support the order under review.” (brackets and citations omitted)).[5] The rule is that an injunction is unavailable unless the party seeking the injunction can ‘“establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief.’ ” Hollywood Towers Condo. Ass’n, Inc. v. Hampton, 40 So.3d 784, 786 (Fla. 4th DCA 2010) (quoting K.W. Brown & Co. v. McCutchen, 819 So.2d 977, 979 (Fla. 4th DCA 2002)).
The no contact order is reversed.
PADOVANO and WETHERELL, JJ., concur.

. After hearing multiple witnesses, the trial court made the following findings of fact: The first incident occurred when Ms. Endres and her ex-husband ran into Mr. Horne, a sergeant with the Columbia County Sheriff’s Office, in a shopping center parking lot. Mr. Horne informed them that their son had broken one of his son’s golf clubs and that he wanted them to pay for it. As Mr. Horne started to leave, his truck came close to Ms. Endres, and she "hit his truck while pushing forward to prevent from being run over.” Mr. Horne then stopped, jumped out of his truck, and yelled at her, "Don't you ever hit my_truck.” To Ms. Endres's ex-husband, he yelled, "Keep your dog on a leash.”
The second incident occurred in the front office of the middle school that the parties’ sons attended. The parents were there to pick up their sons after a meeting about bullying that their sons and other boys attended with the principal. Mr. Horne, who was there in uniform, told Ms. Endres "you're going to have charges coming your way,” and *430 "you don't know who you're messing with.” The trial court found that Mr. Horne was the aggressor during this incident, and that he "acted-out with force by slamming doors, throwing his son’s ... book bag, yelling at school employees, and confronting” Ms. En-dres. The principal was sufficiently concerned with this behavior that he called a school resource officer. The trial court found that, given the first incident, Ms. Endres’s "fear and resulting emotional distress stemming from [the incident at the school] were reasonable.”
The trial court also found that Mr. Horne "has problems both controlling his temper and separating his role as a law enforcement officer from that of a civilian and parent,” that he "has issues understanding his position of trust and responsibility,” and that he "is in need of anger management or behavioral treatment.”

. In the context of an injunction against repeat violence, "violence” means "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against any other person.” § 784.046(l)(a), Fla. Stat. (2009). "Repeat violence” means "two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member.” § 784.046(I)(b), Fla. Stat. (2009). "Competent, substantial evidence must support the trial court's findings of two incidents of repeat violence,” so defined. Terrell v. Thompson, 935 So.2d 592, 593 (Fla. 1st DCA 2006).

. We have no occasion to interpret the federal statute in the present case, but do not endorse the proposition that entry of a "no contact order” in lieu of an injunction explicitly authorized by section 784.046(2), Florida Statutes (2009), makes a difference under 18 U.S.C. § 922 (2006).

. It also requires Mr. Horne to complete an anger management course. Finally, it provides that violation of the order could subject Mr. Horqe to contempt of court, and that a proven violation would result in the entry of a permanent injunction for protection against repeat violence.

. Of course, no criminal violation nor any credible threat of crime was established here.