PER CURIAM.
These cases, which we consolidate for purposes of this opinion, involve permanent injunctions against repeat violence entered against Andrea Power and Charles Fulford based on petitions filed by Richard and Martha Boyle under section 784.046, Florida Statutes (2010). Ms. Power and Mr. Fulford argue that the evidence presented at the hearing on the petitions was legally insufficient to support the injunctions. We agree, and reverse the injunctions.
Ms. Power, Mr. Fulford, and the Boyles all live in the same neighborhood in Nassau County. The events leading to the injunctions started in 2008 when Ms. Power purchased a house from the Boyles. After the sale, there were several disagreements regarding the condition of the house and landscaping that caused the relationship between Ms. Power and the Boyles to sour. Over the next two years, Mrs. Boyle claimed that Ms. Power expressed her distaste of the Boyles by yelling obscenities at their house, “flipping off’ their house, letting her dog urinate on their garage door, and writing profane and inappropriate notes on mail that was delivered to the Boyles’ old residence. The Boyles cited these incidents in support of their petitions for injunction, along with several additional incidents in June 2009 and October 2010.
According to Mrs. Boyle, on June 22, 2009, Ms. Power, Mr. Fulford, and Ms. Power’s husband stumbled by her house, apparently intoxicated, and when the trio stopped at the corner of the Boyles’ lot, Ms. Power yelled obscenities at the house. Mrs. Boyle was on her front porch at the time, but she was shielded behind a bush and there is no evidence that Ms. Power saw her or was directing the obscenities at her. Approximately ten minutes later, Mrs. Boyle testified that she heard several gun shots coming from Mr. Fulford’s back .yard. Ms. Power and Mr. Fulford denied that this incident occurred. '
On October 9, 2010, Mr. Boyle called the police after he saw several people trying to cut plants in his yard. In his statement to the responding officer, Mr. Boyle identified Mr. Fulford as the culprit, and Mr. Fulford was subsequently arrested. However, at the hearing on the petitions in this case, Mr. Boyle testified that it was Ms. Power (not Mr. Fulford) who he saw cutting his plants and that he has “never had one problem with [Mr.] Fulford.” Mr. Boyle testified that the reason he sought an injunction against Mr. Fulford was his concern that Mr. Fulford’s association with Ms. Power, combined with his consumption of alcohol and ownership of firearms, was not safe.
The morning after this incident, Ms. Power walked by the Boyles’ residence with several of her friends and Mrs. Boyle started following them. She told Ms. Power that Mr. Fulford had been arrested for cutting the Boyles’ plants and that Ms. Power was next because the Boyles had security cameras that captured the incident on video. (Mrs. Boyle admitted at the injunction hearing that there was no such video.) Then, according to Ms. Power, Mrs. Boyle threatened to throw her coffee at Ms. Power or one of her friends. Mrs. Boyle acknowledged the confrontation and that she was upset at the time, but denied threatening to throw her coffee at Ms. Power.
On October 11, 2010, Mr. and Mrs. Boyle each filed separate petitions for injunction against Ms. Power and Mr. Ful-ford under section 784.046. The trial court *498 granted temporary injunctions and, after holding a consolidated hearing on all of the petitions, the court entered four separate permanent injunctions for protection against repeat violence, two against Ms. Power (one in favor Mr. Boyle, and one in favor of Mrs. Boyle) and two against Mr. Fulford (one in favor of Mr. Boyle, and one in favor of Mrs. Boyle). In explaining its decision to enter the injunctions, the trial court recognized that “this case does not fall within the purview of our most ordinary uses of [section 784.046],” but the court reasoned that an injunction is necessary “to keep the peace” between the parties and that the circumstances of this case “fall[] within the broader purview of the statute” because of the harassing nature of the incidents described by the Boyles. These timely appeals followed.
Section 784.046 authorizes the trial court to enter injunctions for protection against repeat violence. The statute does not allow the trial court to enter injunctions simply “to keep the peace” between parties who, for whatever reason, are unable to get along and behave civilly towards each other. See Home v. Entires, 61 So.3d 428, 429 (Fla. 1st DCA 2011) (reversing “no contact order” entered pursuant to section 784.046 and observing that “even courts of general jurisdiction are without plenary power to enjoin citizens to remain on good behavior”); Polanco v. Cordeiro, — So.3d -, - (Fla. 2d DCA 2010) (Villanti, J., concurring) (“Petitions for' injunctions against repeat violence, or against domestic violence for that matter, are to be used only to rectify the egregious conduct outlined in the statutes themselves, [citations omitted] These statutory provisions are not a panacea to be used to cure all social ills. In fact, nowhere in the statutory catalog of improper behavior is there a provision for court-ordered relief against uncivil behavior. ...”).
Section 784.046 defines repeat violence as “two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner’s immediate family member.” § 784.046(l)(b), Fla. Stat. (emphasis added). The statute defines violence to mean “any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death.” § 784.046(l)(a), Fla. Stat. Stalking has been interpreted to mean “repeated acts of following or harassment.” Lukacs v. Luton, 982 So.2d 1217, 1219 (Fla. 1st DCA 2008); see also § 784.048(2), Fla. Stat. (providing that a person who “willfully, maliciously, and repeatedly follows or harasses another person” commits the crime of stalking). Harassment is defined as a series of acts over a period of time “directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose.” § 784.048(1)(a); Fla. Stat.; see also McMath v. Biernacki, 776 So.2d 1039, 1040 (Fla. 1st DCA 2001) (citing Bouters v. State, 659 So.2d 235, 238 (Fla.1995), for the proposition that a reasonable person standard applies in determining whether an incident causes substantial emotional distress so as to constitute harassment).
The trial court’s finding of two incidents of violence or stalking required for an injunction under section 784.046 must be supported by competent substantial evidence. See Terrell v. Thompson, 935 So.2d 592, 593 (Fla. 1st DCA 2006); McMath, 776 So.2d at 1041. Here, the trial court apparently credited the testimony of the Boyles regarding the incidents *499 described above. It is not our role to second-guess the trial court’s decision to accept the Boyles’ testimony over that of Ms. Power and Mr. Fulford; however, we agree with Ms. Powers and Mr. Fulford that the incidents described by the Boyles were legally insufficient to support the injunctions for protection against repeat violence because the incidents do not rise to the level of violence or stalking under section 748.046, and as to Mr. Fulford, the Boyles did not even establish the existence of two incidents as required by the statute.
The only incident involving Mr. Fulford was that he was allegedly drunk and with Ms. Power when she yelled profanities at the Boyles’ residence. There was no evidence that Mr. Fulford made any statements or gestures towards the house during this incident, and Mr. Boyle testified that he has “never had one problem with [Mr.] Fulford.” The guilt-by-association-with-Ms. Power justification offered by Mr. Boyle for the petition against Mr. Fulford is not a legitimate basis for the issuance of an injunction under section 784.046.
The incidents involving Ms. Power were immature and uncivil, and we do not in any way condone her behavior towards the Boyles. However, these incidents do not constitute violence or stalking for purposes of an injunction under section 784.046. There was no evidence that Ms. Power ever threatened either of the Boyles with violence or that she committed an overt act that would create a reasonable fear in the Boyles’ minds that violence was imminent. See Gagnard v. Sticht, 886 So.2d 321, 322 (Fla. 3d DCA 2004) (finding that although respondent threatened to kill petitioner and “ ‘F’ him up,” without “overt acts indicating an ability to carry out the threats or justifying a belief in [petitioner] that violence was imminent” no injunction should issue); Russell v. Doughty, 28 So .3d 169, 170 (Fla. 1st DCA 2010) (holding that yelling profanities and threats at the petitioner, even after a previous battery by respondent against petitioner, was not sufficient for a finding of “repeat violence” without evidence that respondent took an action creating a “well-founded fear that violence was imminent”); Sorin v. Cole, 929 So.2d 1092, 1094 (Fla. 4th DCA 2006) (“Mere shouting and obscene hand gestures, without an overt act that places the victim in fear, does not constitute the type of violence required for an injunction.”); Perez v. Siegel, 857 So.2d 353, 355 (Fla. 3d DCA 2003) (holding that two separate incidents where respondent yelled at petitioner, even when respondent allegedly threatened to kill petitioner and her family, were not sufficient to support an injunction without some overt act creating a well-founded fear of imminent violence); Johnson v. Brooks, 567 So.2d 34, 35 (Fla. 1st DCA 1990) (holding that numerous harassing phone calls, some containing threats, were not sufficient to support trial court’s decision to grant injunctive relief). Moreover, based on the confrontation that Mrs. Boyle initiated with Ms. Power and her friends the day after Mr. Fulford was arrested, it appears that the relationship between Ms. Power and Mrs. Boyle is more tit-for-tat than stalker-victim. Indeed, although the trial court did not make any findings on the issue, there was evidence presented at the hearing that Mrs. Boyle communicated with Ms. Power’s employer regarding her negative opinion of Ms. Power’s fitness as an employee. (Mrs. Boyle admitted to talking to Ms. Power’s employer, but claimed that she did so only because the employer solicited her opinion about Ms. Power.)
The Boyles argue that the injunctions against Ms. Power and Mr. Fulford should be affirmed based on this court’s decision in Lukács because, in that case, the court *500 affirmed an injunction under section 784.046 based on a single incident of stalking. We find Lukács to be distinguishable because the respondent’s actions in that case were much more threatening than any of the actions of Ms. Power and Mr. Fulford in this case. In Lukács, there was evidence that the respondent had followed petitioner home from work and then, the next day, verbally threatened the petitioner by saying that he knew where she lived and he might rape her. See 982 So.2d at 1218. Here, there was no evidence that Ms. Power or Mr. Fulford threatened the Boyles with any harm, and although the Boyles claimed that Ms. Power destroyed their plants and that someone shot a gun in Mr. Fulford’s backyard shortly after one of the incidents in which Ms. Power was yelling obscenities at the Boyles’ home, we are not persuaded that these incidents would cause a reasonable person to believe that physical violence was imminent.
In sum, because the evidence presented in support of the petitions was legally insufficient to support an injunction under section 784.046, the trial court erred in entering the permanent injunctions for protection against repeat violence against Ms. Power and Mr. Fulford. Accordingly, we reverse the injunctions and remand for the trial court vacate the injunctions.
REVERSED and REMANDED with directions.
DAVIS, LEWIS and WETHERELL, JJ., concur.