994 So.2d 1131 (2008)
Isaac SHOCKI, Appellant,
v.
Joel ARESTY, Appellee.
No. 3D07-1134.
District Court of Appeal of Florida, Third District.
January 23, 2008.
Rehearing and Rehearing En Banc Denied March 12, 2008.
*1132 McKenna & Obront and Curt Obront, Miami, for appellant.
Joel M. Aresty, North Miami, in proper person.
Before COPE, GREEN, and SALTER, JJ.
SALTER, J.
Isaac Shocki appeals a final injunction for protection against repeat violence entered on the petition of Joel Aresty, an attorney prosecuting his petitions below and this appeal pro se. The trial court granted the injunction solely on the portion of the repeat violence statute[1] which prohibits "stalking."
Shocki and his wife live in a townhome adjacent to the townhome owned and occupied by Aresty and his wife in the Poinciana Island Condominium, Sunny Isles, Florida. Though sharing the concern of the trial court that the friction between these neighbors has escalated beyond reason, we reverse and remand for a new trial.
After the parties had presented their evidence to the court, Aresty injected further testimony and unpled incidents into his closing argumentregarding a further threat allegedly made by Shocki, and two dead birds found on the Arestys' walkway the day of the hearing. This further narrative was inherently prejudicial, and Shocki's counsel had neither fair notice nor the opportunity to cross-examine regarding the new matters.
We review the findings and conclusions in the injunction to determine whether each alleged act of violence is founded upon competent, substantial evidence. Santiago v. Towle, 917 So.2d 909, 910 (Fla. 5th DCA 2005). The trial court's rulings on evidence are reviewed for an abuse of discretion, and we also consider Shocki's contentions that the hearing denied him due process because he was not afforded fair notice of the charges or given an opportunity to address them. Clement v. Ziemer, 953 So.2d 700, 702 (Fla. 5th DCA 2007).

Initial Petition
The proceedings below began when Aresty filed a verified petition for ex parte injunction for protection against repeat violence. The petition alleged that, the day before the filing, Shocki had "banged loudly, aggressively, violently and repeatedly on [the Arestys'] bedroom wall," and then banged loudly on the lid of the Arestys' barbecue grill on their outside deck with a "hammer or other instrument" alleged to constitute a "deadly weapon." Photos of the grill show that it was dented numerous times. The petition alleged that this incident was an assault under section 784.011 of the Florida Statutes, an aggravated assault *1133 under section 784.021 of the Florida Statutes ("because it was committed with a deadly weapon and/or with an intent to commit a felony, burglary under Florida Statute 810.02"), and stalking and aggravated stalking under section 784.048 of the Florida Statutes.
The petition also alleged that Shocki had verbally threatened Aresty on at least two occasions in the six months preceding the petition "with statements inferring that [Shocki] would do something to [Aresty] or his wife, or their property." Aresty asserted that Shocki interrupted a dinner on the Arestys' deck one evening "in an aggressive, violent, and abusive nature, shouting and screaming profanities and insults, and causing [Aresty] and his wife to fear for their safety." Finally, Aresty alleged that before the most recent six-month period, Shocki had "established a history of violent confrontations with his neighbors, including acts of noise nuisance and vandalism of property, resulting in [Aresty] and his wife fearing for their safety."
The trial court denied the ex parte petition, finding that the allegations failed to meet the statutory criteria for an injunction under section 784.046 of the Florida Statutes (2007).

Emergency Supplemental Petition and Hearing
Aresty sought and was granted a hearing on his petition. Approximately three weeks after the original petition and two weeks before the second installment of the hearing,[2] Aresty filed and served an "emergency supplemental verified petition for ex parte injunction for protection against repeat violence and for contempt of court." This supplement alleged that on the night before, Shocki had committed a further act of violence by "brutally pouring a corrosive substance on [the Arestys'] BMW 743Li, and causing what is believed to be at least $20,000 in damage to the surface of the vehicle." Aresty alleged that he and his wife had suffered psychological damage. Photos introduced at the later hearing showed that some substance had been poured across the hood and front of Mrs. Aresty's car.
The hearing on the original and supplemental petition established the property damage and various verbal confrontations. After the record was closed, and as Aresty summed up the evidence and law, he said (over objection), "Your Honor, as I walked out this morning to come to court, and I left separately of my wife, in front of our walkway there were two dead birds." He told the trial court that the birds were arranged "like a warning from a TV show where somebody puts a dead fish in front of your apartment or something like that." He also told the court that Shocki "came up to me at our mailbox after the last hearing and after the car had been destroyed and he said I have evidence on your wife, I know you love her, but you should tell her to be careful."
The trial court then entered a five-year injunction precluding Shocki from contacting Aresty, coming within 100 feet of Aresty's automobile, or coming within 10 feet of Aresty if they pass each other going to and from their townhomes. The court concluded that Aresty had established stalking under the statute.

The Statutes
The trial court correctly found that assault and battery did not occur, though pled. Aresty rested his evidence of "violence" and his legal theory upon acts of *1134 "stalking" under sections 784.046 and 784.048 of the Florida Statutes (2007). In this instance, Aresty alleged that Shocki harassed him as defined in paragraph 784.048(1)(a), i.e., engaging in "a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." Paragraph (b) of the same statute further defines "course of conduct" as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."

Notice and Due Process
In this case, the trial court was urged to find such a course of conduct, harassment, and stalking, but did so on evidence which included prejudicial and "new" incidents not contained in the petitions or evidentiary portion of the hearings (the discovery of the dead birds and the alleged threat at the mailbox, described by Aresty only as a part of his closing argument). Shocki was entitled to fair notice of the charges and allegations and an opportunity to present his own case regarding them. See Clement v. Ziemer, 953 So.2d 700, 702 (Fla. 5th DCA 2007).

Conclusion
Condominium neighbors ordinarily should explore and exhaust a variety of alternatives to litigation before bringing repeat violence claims to court-these alternative means of resolution might include other neighbors known by the parties, the property manager, a paid mediator, a religious advisor, or a counselor.[3] Noise, profanity, and claims of vandalism to property do not always warrant injunctive relief under the stalking and repeat violence statutes. See Perez v. Siegel, 857 So.2d 353 (Fla. 3d DCA 2003); Santiago v. Towle, 917 So.2d 909 (Fla. 5th DCA 2005).
Nonetheless, and but for the due process and fairness issues presented by Aresty's introduction of new and prejudicial personal commentary after the pleadings and evidence were closed, we would agree with the trial court that the course of conduct between these neighbors may require intervention.
Accordingly, we reverse the injunction entered below. We remand the case to the trial court with directions to afford Aresty an opportunity to further amend his petition to specify the details of the acts alleged to constitute stalking and statutory violence, and for a new trial on the claims as amended.
Reversed and remanded.
NOTES
[1] Section 784.046, Florida Statutes (2007).
[2] The hearing on the original petition began on March 26, 2007, and concluded on April 16, 2007.
[3] Lawyers of the stature of Lincoln and Gandhi have observed that litigation seldom yields the best solution to a problem, and that it sometimes only causes greater harm. See F. Angones, Blessed Are the Peacemakers, 81 The Florida Bar Journal 6 (Dec. 2007).