BLACK, Judge.
Kevin Touhey appeals a final judgment of injunction for protection against stalking entered in favor of Frank Seda. Mr. Touhey contends that there was insufficient evidence of stalking to support the injunction. We agree and reverse.
Newly-enacted section 784.0485, Florida Statutes (2012), provides injunctive relief from stalking.[1] Given the statute’s recent enaction, support for our holding comes from cases analyzing allegations of stalking in the context of section 784.046, which applies to injunctions for protection against repeat violence, sexual violence, and dating violence.[2]
Stalking is defined as the “willful[ ], malicious[ ], and repeated[ ] following], harassing], or cyberstalk[ing] [of] another person.” § 784.048(2). “ ‘Harass’ means to engage in a course of conduct directed at a *1204 specific person which causes substantial emotional distress to that person and serves no legitimate purpose.” § 784.048(l)(a); see also § 784.048(l)(b) (defining “ ‘[cjourse of conduct’ ” as “a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose”), (d) (defining “ ‘Myberstalk’ ” as “engaging] in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose”). Courts apply “ ‘a reasonable person standard, not a subjective standard,’ ” to determine whether “ ‘an incident causes substantial emotional distress.’ ” Goudy v. Duquette, 112 So.3d 716, 717 (Fla. 2d DCA 2013) (quoting Slack v. Ming, 959 So.2d 425, 426 (Fla. 2d DCA 2007)). Each incident of stalking must be proven by competent, substantial evidence to support an injunction against stalking. See generally id. at 717.
On October 26, 2012, Mr. Seda filed a sworn petition for injunction for protection against stalking. In the petition, Mr. Seda asserted that he has been afraid of Mr. Touhey since January 2012 as a result of Mr. Touhey repeatedly attempting to contact Mr. Seda and because Mr. Touhey threatened and harassed him and his employees. At the hearing on November 6, 2012, however, Mr. Seda testified that the alleged stalking occurred only since about late September 2012, when Mr. Touhey’s son pulled a gun on Mr. Seda. Mr. Seda claimed that Mr. Touhey sent him a text message at that time, stating “[W]e can resolve this problem.” Mr. Seda admitted that he dined with Mr. Touhey and was a guest at Mr. Touhey’s home on various occasions between March 2012 and June 2012.
The circuit court asked Mr. Seda to provide specific examples of the alleged stalking, to which Mr. Seda testified that Mr. Touhey called and visited his office, asking Mr. Seda’s employees about his whereabouts. Mr. Seda did not indicate that any threats were made; rather, he claimed that Mr. Touhey was trying to intimidate him. Mr. Seda testified that he “fears for [his] life” as a result of the incident with Mr. Touhey’s son, though only Mr. Touhey, not his son, was named on the petition.
Mr. Seda produced three witnesses to support his stalking claims, which primarily involved indirect contact. See Jones v. Jackson, 67 So.3d 1203, 1204 (Fla. 2d DCA 2011) (“Indirect contact can constitute harassment.”). All three witnesses worked with both Mr. Seda and Mr. Touh-ey in some capacity. The first witness testified that he did not have any firsthand knowledge of the alleged incidents, the second witness testified that Mr. Touhey went to Mr. Seda’s office once and called the office twice in the past month but made no threats and simply asked for Mr. Seda, and the third witness testified that he was not aware of any stalking.
We conclude that the record lacks a sufficient basis for the circuit court’s finding that Mr. Seda proved “inappropriate contact” constituting stalking. The testimony only established a single incident of “following,” which was not malicious. Further, a reasonable person would not suffer “substantial emotional distress” as a result of Mr. Touhey visiting once and calling twice to inquire about Mr. Seda’s whereabouts or the single text message following the incident with Mr. Touhey’s son. Cf. Goudy, 112 So.3d at 717-18 (reversing injunction for protection from repeat violence because one willful and malicious *1205 incident of following coupled with one telephone call and three other following incidents did not constitute stalking; since a reasonable person would not suffer emotional distress from the call or three non-malicious following encounters, there was no evidence of “repeated harassment or malicious following”); Jones, 67 So.3d at 1204 (reversing injunction for protection from repeat violence because the threatening phone calls and text messages did not amount to harassment and “without harassment there was no proof of stalking”); Slack, 959 So.2d at 426 (reversing injunction for protection against repeat violence because the two voicemails, in which the respondent asserted that he would make an “arrangement” if the petitioner did not stay away from his wife, were insufficient for a reasonable person to suffer substantial emotional distress). Based upon Mr. Seda’s testimony, it appears that his fear and distress actually stemmed from the incident with Mr. Ton-ey's son.
Furthermore, Mr. Touhey had a legitimate purpose for trying to get in touch with Mr. Seda. Mr. Seda and Mr. Touh-ey’s wife, Kristin Touhey, were business partners, and Mr. Touhey worked for his wife and handled some of the management responsibilities of the business. Though the testimony regarding Mr. Seda and Mrs. Touhey’s current business relationship was somewhat disputed, it appears that they were in the process of dissolving their business relationship. Thus, Mr. Touhey had a legitimate purpose for attempting to contact Mr. Seda, as Mr. Touhey participated, to some extent, in Mr. Seda’s business. See § 784.048(l)(a); cf. Goudy, 112 So.3d at 717 (concluding that respondent had a legitimate purpose for contacting petitioner where both parties agreed that the call addressed respondent’s daughter’s participation in a dance competition); Alter v. Paquette, 98 So.3d 218, 220 (Fla. 2d DCA 2012) (concluding that respondent had a legitimate purpose for contacting petitioner where respondent testified that she was seeking repayment of a loan).
Because there was insufficient evidence that Mr. Touhey stalked Mr. Seda, we reverse the injunction for protection against stalking and remand with instructions to the circuit court to dismiss Mr. Seda’s petition.
Reversed and remanded.
CASANUEVA and CRENSHAW, JJ., Concur.

. Section 784.0485 became effective October 1, 2012, "creating] a cause of action for an injunction for protection against stalking.” See ch. 2012-153, §§ 3, 6, Laws of Fla. (2012).

. The “statutory cause of action for an injunction for protection against stalking ... is similar to the current cause[] of action for [an] injunction[] against repeat violence.” SB 950 (2012), Staff Analysis (Jan. 24, 2012), http://www.flsenate.gov/Session/Bill/2012/ 0950/ Analyses/2012s0950.pre.ju.PDF.