NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LORRAINE CATERINO,                        )
                                          )
            Appellant,                    )
                                          )
v.                                        )          Case No. 2D18-1712
                                          )
GAIL JANIS TORELLO,                       )
                                          )
            Appellee.                     )
_____   )

Opinion filed June 26, 2019.

Appeal from the Circuit Court for Collier
County; Christine H. Greider, Judge.

Landon P. Miller of Mangone & Miller Law
Offices, Naples, for Appellant.

Gail Janis Torello, pro se.


BLACK, Judge.

        Lorraine Caterino challenges the final judgment of injunction for protection

against stalking entered following an evidentiary hearing, arguing that there was

insufficient evidence of two instances of stalking.  She asserts that the evidence

demonstrated that there was a legitimate purpose for the contact between her and Gail

Torello, the petitioner.  Ms. Caterino further contends that the evidence demonstrated

merely a "tit for tat" scenario between two neighbors and that the interactions would not cause a reasonable person to experience substantial emotional distress. We agree and reverse.

On April 6, 2018, Mrs. Torello filed a petition seeking an injunction for protection against stalking against Ms. Caterino, her neighbor, alleging that since January 2018 Ms. Caterino has been following, harassing, and verbally attacking her. At the evidentiary hearing on the petition, Mrs. Torello testified that Ms. Caterino has been following her while videotaping and photographing her and that Ms. Caterino has made threatening comments such as "you're going down," "you'll get yours," and "you're all alone." Mrs. Torello claimed that when she drives by Ms. Caterino, Ms. Caterino looks at her "like she absolutely wants to kill" her and that Ms. Caterino stares at her whenever she is outside. In February 2018 Ms. Caterino sent Mrs. Torello a letter directing Mrs. Torello to "CEASE AND DESIST ALL DEFAMATION OF OR [SIC] LORRAINE CATERINO'S CHARACTER AND REPUTATION," failing which Ms. Caterino would pursue all available legal remedies. The letter, which was admitted into evidence, purported to be from Florida's Civil Law Group, and Ms. Caterino signed it as treasurer. Mrs. Torello asserted that Ms. Caterino had drafted the letter herself and that the purported law firm does not exist. Mrs. Torello also testified that Ms. Caterino complained to the code enforcement division of Collier County about her in-home pet sitting business, that an enforcement officer conducted an investigation, and that the case had been closed. Mrs. Torello stated that her pet sitting business did not violate any county codes or the homeowner's association (HOA) declaration. Mrs. Torello further testified that on April 5, the day before she filed the petition, Ms. Caterino

approached Mrs. Torello while she was outside of her home, got in her face, and began yelling obscenities at her. Ms. Caterino refused to leave Mrs. Torello's property, so Mrs. Torello called the police but Ms. Caterino took off in her car before the police arrived. Later that same evening while Mrs. Torello was at an HOA meeting, her surveillance system captured Ms. Caterino entering upon Mrs. Torello's property and removing a building permit that was attached to the garage door. Mrs. Torello again contacted law enforcement. The video of the incident was admitted into evidence. Mrs. Torello contended that Ms. Caterino's conduct has affected her everyday life: she does not want to go outside, she feels uncomfortable having company to her home, and she has trouble sleeping at night because Ms. Caterino is always outside with her dog.

Mrs. Torello's husband also testified at the hearing. He succeeded Ms. Caterino as the HOA president on January 31 or February 1, 2018. Mr. Torello claimed that Ms. Caterino has made their lives "hell." He indicated that Mrs. Torello is miserable and that Ms. Caterino's conduct has affected his relationship with Mrs. Torello. Though Mr. Torello did not observe Ms. Caterino yell at Mrs. Torello while she was outside on April 5, he claimed that Mrs. Torello was "shaking like a leaf" afterward.

Ms. Caterino also testified at the hearing and explained that "this is a very simple situation that has gone completely out of control in a very small neighborhood where we all used to get along." She claimed that she had served as the president of the HOA for nine years and explained that the governing documents prohibit homeowners from operating businesses out of their homes. She claimed that because Mrs. Torello has been running a business out of her home for the last couple of years, she asked the attorney for the HOA to send Mrs. Torello a cease and desist letter,

- 3 -

which angered Mrs. Torello. The letter from the attorney for the HOA, dated January 29, 2018, was admitted into evidence, and it cited the specific section of the HOA declaration that prohibits homeowners from operating an in-home business. After the letter was sent, Mrs. Torello texted Ms. Caterino, claiming that Ms. Caterino was "ruining her life" and that Mrs. Torello was the "one person that can wreck a whole neighborhood." Ms. Caterino did not provide the court with these alleged text messages. Ms. Caterino admitted that she had taken pictures of Mrs. Torello walking dogs but claimed that she had been asked to take the pictures by the individual investigating the alleged county code violation; she denied that the case had been closed. With regard to the incident outside of Mrs. Torello's home on April 5, Ms. Caterino testified that she was about to leave her house to pick up a friend from the airport and when she opened her garage door her dog ran out and over to Mrs. Torello's yard. When she went to collect the dog, Mrs. Torello told her to put the dog on a leash and get out of her yard. Ms. Caterino admitted that she then yelled an obscenity at Mrs. Torello who, in turn, threatened to call the police. Ms. Caterino then got in her car and drove to the airport. And with regard to the incident captured on Mrs. Torello's surveillance system later that evening, Ms. Caterino claimed that she entered upon Mrs. Torello's property while holding a document which expressed her frustration and that of several neighbors with Mrs. Torello and her in-home pet sitting business. The document Ms. Caterino claimed to have had in her hand was admitted into evidence only for the purpose of corroborating her story but not for its content.

Ms. Caterino's witness, a neighbor, testified that she had never seen Ms. Caterino give Mrs. Torello dirty looks and was unaware of any difficulties between the parties.

At the close of the evidence, the court made the following findings:

THE COURT: Okay. Thank you.
Court's prepared to make findings and rule on the requested relief.
The requirement for the Court's finding is to make a finding that two incidents of violence or stalking was [sic] committed by the respondent which were directed against the petitioner or the petitioner's immediate family.
The allegations in the petition are between January of 2018 and April 6 of 2018. One of the two incidents of stalking must have been within six months of filing the petition.
May I have the exhibits please?
The letter received [from the attorney for the HOA] dated January 29 of 2018 is not stalking by the respondent.
Ms. Caterino did not object to the admissibility of a letter from Florida['s] Civil Law Group, which she signed as treasurer. I didn't hear any evidence or testimony that Ms. Caterino is the treasurer of the Florida['s] Civil Law Group.

MS. CATERINO: No. I'm the treasurer of the board, ma'am. I'm sorry.

THE COURT: Okay.

M[R]S. TORELLO: No, she's not.

THE COURT: Okay.

MS. CATERINO: Oh, excuse me.

THE COURT: Please don't interrupt the Court.

M[R]S. TORELLO: Sorry.

MS. CATERINO: I'm a director, ma'am. I'm sorry. I was treasurer.

THE COURT: Okay.

- 5 -

MS. CATERINO: I'm a director. My bad.

THE COURT: And who prepared this letter?

MS. CATERINO: The cease and desist letter?

THE COURT: Yeah.

MS. CATERINO: I did it off the computer.

THE COURT: Okay.

MS. CATERINO: I did. I did to try to make it peaceful.

THE COURT: Well, let me tell you that - -

MS. CATERINO: Yes, ma'am.

THE COURT: - - it is a potential criminal act to represent yourself as a lawyer when you are not.

MS. CATERINO: No. It's - -

THE COURT: It indicates a defamation settlement agreement within 10 days to Florida['s] Civil Law Group, and then you signed it as the treasurer. It's unclear whether you're the treasurer of the law group or not.

There were two incidents, at least, of - - that are corroborated that the respondent entered into the property of the petitioner. I have reviewed the videos, Petitioner's Exhibit Number 4, and there doesn't appear to be a piece of paper or anything in the respondent's hand that would corroborate a document being delivered.

There are two depictions. One, she walks up. Dog is behind her. Nothing in her hands. Within seconds, walks away with a document in her hand, which she folds up.

Sometime later, there is some indication that she walks back again to the property, dog behind her, unleashed. Unclear as to documents or paperwork.

There is no legitimate purpose, ma'am, for you to go on the property. There is no legitimate purpose of removing what appeared to be a contractor's license from the garage door of the petitioner.

MS. CATERINO: I did not do that.

THE COURT: Well, ma'am, what you indicated - -

MS. CATERINO: I just want it on record.

THE COURT: What you indicated under oath and you are not to interrupt me again.

MS. CATERINO: Okay. I just want it on the record.

THE COURT: That's fine.

MS. CATERINO: Thank you.

THE COURT: You indicated that you walked up with a sheet of paper. That is not depicted in the video. And I watched it five times.
What is depicted in the video is walking away from the front door where the camera is located with a document.
The court finds that there is sufficient evidence to support the entry of a repeat violence injunction for a period of two years.

This appeal followed.

Section 784.0485, Florida Statutes (2017), provides for injunctive relief from stalking. The pertinent statutory definitions are found in section 784.048.

Stalking is defined as the "willful[ ], malicious[ ], and repeated[ ] follow[ing], harass[ing], or cyberstalk[ing] [of] another person." § 784.048(2). " 'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a); see also § 784.048(1)(b) (defining " '[c]ourse of conduct' " as "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose") . . . .

Touhey v. Seda, 133 So. 3d 1203, 1203-04 (Fla. 2d DCA 2014) (alterations in original).

Moreover, "[c]ourts apply 'a reasonable person standard, not a subjective standard,' to determine whether 'an incident causes substantial emotional distress.' " Id. at 1204

(quoting Goudy v. Duquette, 112 So. 3d 716, 717 (Fla. 2d DCA 2013)). "Each incident of stalking must be proven by competent, substantial evidence to support an injunction against stalking." Id.

The court's express findings indicate that it entered the injunction based solely on the fact that Ms. Caterino entered upon Mrs. Torello's property twice on the evening of April 5 as depicted in the surveillance footage. The court determined that Ms. Caterino did not have a legitimate purpose for entering upon the property, discounting Ms. Caterino's testimony that she already had a document in her hand when she approached the house and did not take the permit attached to the garage door. While Ms. Caterino's conduct may have been willful and malicious, at least with regard to her entering upon the property the first time to remove the permit, in order to constitute stalking by harassment the conduct must have caused substantial emotional distress. See § 784.048(1)(a). The court made no findings as to emotional distress, and although Mrs. Torello and her husband testified regarding the affect Ms. Caterino's conduct has had on Mrs. Torello, in determining whether conduct causes substantial emotional distress we must use a reasonable person standard and not a subjective standard. See Touhey, 133 So. 3d at 1204; Slack v. Kling, 959 So. 2d 425, 426 (Fla. 2d DCA 2007). The conduct referenced by the circuit court in this case—entering upon the property and removing the permit—would not cause a reasonable person to suffer substantial emotional distress. Compare Paulson v. Rankart, 251 So. 3d 986, 990 (Fla. 1st DCA 2018) (reversing injunction for protection against stalking because a reasonable person would not suffer substantial emotional distress as a result of a neighbor—who had been complaining about the petitioner's outdoor light and dogs—

looking at the petitioner's utility meter near the petitioner's property on multiple occasions and staring at the petitioner while she sunbathed), and David v. Schack, 192 So. 3d 625, 628 (Fla. 4th DCA 2016) (reversing injunction for protection against stalking because a reasonable person would not suffer substantial emotional distress when respondent "banged on [petitioner's] door and left her a letter and a check"), with Robertson v. Robertson, 164 So. 3d 87, 88 (Fla. 4th DCA 2015) (affirming entry of injunction for protection against stalking because respondent's conduct of looking inside petitioner's house in the middle of the night with a flashlight, uninvited and without warning, for three consecutive nights constituted a course of conduct causing substantial emotional distress). See also Touhey, 164 So. 3d at 1204-05 (reversing injunction for protection against stalking because the actions of the respondent—visiting the petitioner's office once and calling the office twice to inquire about petitioner's whereabouts—would not cause a reasonable person to suffer substantial emotional distress); Jones v. Jackson, 67 So. 3d 1203, 1204 (Fla. 2d DCA 2011) (concluding that there was not competent substantial evidence of stalking because a reasonable person in the petitioner's position would not have suffered substantial emotional distress as a result of receiving threatening phone calls and text messages).[1]

---

[1]With regard to the letter threatening a defamation lawsuit, the court did not expressly find that this conduct constituted stalking. The court only indicated that it was unclear whether Ms. Caterino was the treasurer of the purported law firm and that "it is a potential criminal act to represent [herself] as a lawyer when [she is] not." While this conduct, in the absence of a legitimate purpose, could help support the entry of an injunction for protection against stalking, this letter alone would not constitute a course of conduct as required by the statute. See Poindexter v. Springer, 898 So. 2d 204, 206-07 (Fla. 2d DCA 2005) (holding that the conduct of sending the petitioner, who was the respondent's private investigator, "courtesy copies" of three letters addressed to three different attorneys but mailed in a single envelope requesting advice on what to do regarding petitioner's incompetency and ethics served no legitimate purpose and was

While it is unfortunate that these neighbors are unable to get along, an injunction is not designed to " 'keep the peace' between parties who, for whatever reason, are unable to get along and behave civilly toward each other." See Power v. Boyle, 60 So. 3d 496, 498-99 (Fla. 1st DCA 2011) (holding that respondent's conduct of "yelling obscenities at [the petitioners'] house, 'flipping off' their house, letting her dog urinate on their garage door, and writing profane and inappropriate notes on [their] mail" did not amount to stalking; the relationship between the parties—who were neighbors— "is more tit-for-tat than stalker-victim"). Simply put, "[n]oise, profanity, and claims of vandalism to property do not always warrant injunctive relief under the stalking and repeat violence statutes." Shocki v. Aresty, 994 So. 2d 1131, 1134 (Fla. 3d DCA 2008).

Because there was insufficient evidence that Ms. Caterino stalked Mrs. Torello, we reverse the final injunction for protection against stalking and remand with

intended only to harass constituted only a single act and not a course of conduct as required to support the entry of a permanent injunction against stalking). We also note that repeatedly videotaping and photographing another without a legitimate purpose can constitute stalking. See Goosen v. Walker, 714 So. 2d 1149, 1150 (Fla. 4th DCA 1998). In this case, however, Ms. Caterino testified that she took the photographs of Mrs. Torello for a legitimate purpose—the county code violation investigation. See Paulson, 251 So. 3d at 989 n.3 (noting that the filing of complaints to authorities does not constitute harassment); Curry v. State, 811 So. 2d 736, 741 (Fla. 4th DCA 2002) ("As a matter of law, [filing numerous complaints and reports to government agencies] cannot amount to 'harassment' within the meaning of [section 784.048(1)(a)]. A report to an arm of government, concerning a matter within the purview of the agency's responsibilities, serves a 'legitimate purpose' within the meaning of section 784.048(1)(a), regardless of the subjective motivation of the reporter."). The circuit court was in the best position to evaluate the credibility of the witnesses, and in the absence of findings to the contrary, we assume the court found Ms. Caterino's testimony regarding the purpose of this conduct to be credible.

instructions to the circuit court to dismiss Mrs. Torello's petition.  See <u>Touhey</u>, 133 So. 3d at 1205.

Reversed and remanded.

CASANUEVA and MORRIS, JJ., Concur.