# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**PATRICK SUTTON,**
Appellant,

v.

**HAROLD J. FOWLER, JR.,**
Appellee.

No. 4D20-1978

[December 22, 2021]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; James W. McCann, Judge; L.T. Case No. 56-2020-DR-1266.

Jeffrey H. Garland of Jeffrey H. Garland, P.A., Fort Pierce, for appellant.

Karen O'Brien Steger of Steger Law, Stuart, for appellee.

WARNER, J.

The trial court entered a final judgment of protection against stalking against appellant, precluding him from living at his condominium. Because the court relied on conduct not alleged in the petition and not tried by implied consent, we must reverse.

Appellant Patrick Sutton and appellee/petitioner Harold Fowler both live in the same condominium complex in St. Lucie County. Sutton and his wife own a condominium unit directly above the unit owned by appellee Fowler and his wife. Fowler filed a petition and an amended petition for an injunction for protection against stalking, alleging three dates where he claimed that incidents necessitating an injunction occurred—April 26, 2020, June 7, 2020, and June 8, 2020. The court entered a temporary injunction precluding Sutton from going within 500 feet of Fowler's current residence. After a deputy served the order on Sutton, he immediately began cursing and then threatening Fowler from his condominium balcony, loud enough for Fowler to hear. Sutton was arrested for a criminal violation of the temporary injunction.

At the final hearing, Fowler testified to the various events. Sutton moved into his unit above the Fowlers in 2019. Fowler testified that he

had not spoken to Sutton except for one occasion prior to the incidents alleged in the petition. On April 26th, 2020, Sutton went out on his balcony screaming and yelling and howling like a wolf. While Fowler testified that Sutton yelled that he would get in Fowler's "[expletive deleted] face," Fowler did not recall that Sutton actually used his name.

The next incident was on June 7, 2020. Again, Sutton yelled expletives at Fowler, this time using his name. Other people could hear Sutton screaming.

On June 8, 2020, Sutton again started screaming and yelling on the balcony, that "the guy underneath me [is] a [expletive deleted] [---hole]." Sutton then went inside and continued screaming so loudly that Fowler could hear him in their unit. He could hear Sutton kicking doors. Concerned for himself, his wife, and his neighbors, Fowler called 911 and contacted the condominium manager. A short time later, Sutton banged on Fowler's door. Thinking it was the manager coming to check on the situation, Fowler started to open the door, when his wife yelled that it was Sutton at the door. Sutton tried to pull the door out of Fowler's hands and open it. Sutton demanded, "I want to know if you're making complaints against me." Fowler testified that Sutton tried to enter, and Fowler had "to push him out the front door." Fowler restrained Sutton in a headlock until management showed up and made Sutton go back to his unit. Sutton continued yelling as they escorted him back to his unit, threatening that he would make Fowler's life miserable by tap dancing on the floor. Sutton also called Fowler an "[expletive deleted] Jew."

The police arrived and reviewed a video Fowler's wife had taken of the incident with Sutton at their door. The deputy thought Sutton was heavily intoxicated. The deputy went to Sutton's unit and heard both Sutton and his wife screaming. When Sutton answered the door, the officer observed numerous empty liquor bottles and beer cans. Sutton appeared intoxicated. Sutton again screamed about Fowler and then about his wife. Considering Sutton a danger to himself and others, the deputy decided to Baker Act him. On the way to the hospital, the deputy asked Sutton if he owned firearms and Sutton stated "no" but that if he did, "he would kill himself and hurt others and also kill law enforcement." The deputy felt that Sutton was a danger to his wife, his neighbors, and himself.

Fowler testified that he started the injunction process on June 9, 2020. After Sutton was released from the Baker Act, he was served with the temporary injunction on the evening of June 12. Directing Fowler's attention to June 12, his counsel asked, "when Mr. Sutton was served with the injunction at 8:00 P.M. on June 12, 2020, what did he then commence

2

to -- begin to do after he was served with the injunction for protection?" Sutton's counsel objected because this incident was not part of the petition or amended petition and outside its scope. The court overruled the objection.

Fowler then testified that Sutton "immediately started banging on the floors and—and yelling, screaming and howling, "[Expletive deleted], [Fowler]. [Expletive deleted], [Fowler]." This went on approximately four hours. After midnight, Sutton said "[Fowler], can you hear me? [Fowler], can you hear me?" "[C]ome out onto the balcony." Fowler called the condominium management. Sutton continued to shout expletives and yelled that he had a gun and would shoot Fowler. (A recording of this call was played for the court but was not transcribed by the court reporter.) Fowler finally called 911, as he feared for his life and safety.

The deputy who arrived in the early hours of June 13 listened to the recording of Sutton's threatening screaming, and went to Sutton's condominium. Sutton smelled of marijuana. He denied threatening Fowler but said that he could say anything he wanted to inside his own residence. The deputy arrested Sutton for violating the temporary injunction. He took Sutton into custody, and Sutton continued to curse and called the deputy names on the way to jail.

A neighbor also testified at trial, mostly about the June 12 incident. As to the prior incidents, the neighbor confirmed that on April 26, Sutton was howling on his balcony, and on June 7, she heard cursing, using Fowler's name. On June 12, she heard the commotion and was very frightened, because she feared Sutton would mistakenly barge into her unit, which was next door to Fowler's unit.

When asked by his counsel, Fowler stated that he was afraid of Sutton and would not be satisfied with an injunction which simply prohibited Sutton from going onto Fowler's floor of the condominium or the common areas. He thought Sutton was volatile and unpredictable. He did not have any idea why Sutton had fixated on him and identified him as Jewish. He was afraid to open his door.

During closing arguments, Fowler's counsel argued that a permanent injunction keeping Sutton away from the condominium entirely was the only appropriate remedy, due to the fact that Sutton violated the temporary injunction just after it was served on him. Sutton's counsel argued that the June 12 event should not be considered because it was an unpled event and that neither the yelling on June 7, nor the incident on April 26 could support the injunction. Counsel also argued that any

3

injunction should be narrowly tailored so as not to take away Sutton's right to his property.

The court was concerned because of Sutton's negative behavior. It concluded that people had a right to peaceably enjoy their property, which Sutton was preventing. The court then imposed a permanent injunction prohibiting Sutton from going onto the condominium property, which extended to both sides of A1A. As a basis for the injunction, the court found "repeated violations of peaceable enjoyment of [Fowler's] property by Mr. Sutton unprovoked, followed by an immediate violation of the injunction[.]" Sutton's counsel again objected to the court's reliance on the June 12 incident because it was not pled as a ground for the injunction.

The final judgment of injunction for protection against stalking was entered the same day as the hearing, August 11, 2020. The order provides that the injunction will be in full force and effect until further order of the court. The order prohibits Sutton from going within 500 feet of the condominium and prohibits Sutton from returning to the entire condominium property on either side of A1A, other than to use the public road.

Sutton filed a motion for rehearing arguing in part that the evidence of the violation of the injunction was not pled in the petition and violated Sutton's constitutional right to due process. The court denied the motion and this appeal followed.

"Trial courts have 'broad discretion in granting . . . injunctions, and unless a clear abuse of discretion is demonstrated, appellate courts will not disturb the trial court's decision.'" *DiTanna v. Edwards*, 323 So. 3d 194, 200 (Fla. 4th DCA 2021) (quoting *Hobbs v. Hobbs*, 290 So. 3d 1092, 1094 (Fla. 1st DCA 2020)). "The trial court's order granting a permanent injunction is reviewed for competent substantial evidence." *Id.* (citations omitted). "But the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law" reviewed de novo. *Cash v. Gagnon*, 306 So. 3d 106, 109 (Fla. 4th DCA 2020) (quoting *Krapacs v. Bacchus*, 301 So. 3d 976, 978 (Fla. 4th DCA 2020)).

Sutton argues that the trial court erred by admitting evidence concerning his violation of the temporary injunction stemming from the events the evening of June 12 and into the early morning of June 13. Without those events, the evidence was insufficient to support the issuance of a permanent injunction for protection against stalking. We agree that the court erred in considering those events in determining

4

whether to issue a permanent injunction, because Fowler never sought to amend his petition to allege them. While the violation of the temporary injunction may have been relevant to the scope of any injunction, the trial court relied on the conduct to support the granting of the injunction, over the objection of Sutton.[1]

Section 784.048, Florida Statutes (2020) defines stalking as the "willful[ ], malicious[ ], and repeated[ ] follow[ing], harass[ing], or cyberstalk[ing of] another person." *DiTanna*, 323 So. 3d at 201 (quoting *Lopez v. Lopez*, 922 So. 2d 408, 410 (Fla. 4th DCA 2006)). Section 784.048(1) also defines harassing, a component of stalking, as follows: "(a) 'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. (2020). "In turn, the statute defines a 'course of conduct' as 'a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose.'" *DiTanna*, 323 So. 3d at 201 (quoting § 784.048(1)(b), Fla. Stat. (2020)).

"In order to be entitled to a stalking injunction two separate instances of stalking must be proven by competent substantial evidence." *Id.* at 201 (citing *Burns v. Bockorick*, 220 So. 3d 438, 440 (Fla. 4th DCA 2017)). "Each incident of stalking must be proven by competent, substantial evidence to support an injunction against stalking." *Touhey v. Seda*, 133 So. 3d 1203, 1204 (Fla. 2d DCA 2014) (citation omitted). "Two or more acts that are part of one continuous course of conduct are legally insufficient to qualify as separate instances of harassment." *Cash*, 306 So. 3d at 109 (citing *Packal v. Johnson*, 226 So. 3d 337, 338 (Fla. 5th DCA 2017)). "A course of conduct requires multiple acts that are separated by time or distance." *Id.* (citing *Levy v. Jacobs*, 69 So. 3d 403, 405 (Fla. 4th DCA 2011)).

Harassment under the statute must result in substantial emotion distress to the recipient.

---

[1] Fowler also claims that Sutton did not object to the introduction of the testimony regarding the June 12 incident when other witnesses testified. Having objected and secured a definitive ruling the first time the incident came up in testimony, he was not required to continually assert an objection. *See* § 90.104, Fla. Stat. (2020) ("If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.")

To qualify as stalking under the statute, the conduct must meet two requirements. First, "the defendant's conduct must cause substantial emotional distress, which is greater than just an ordinary feeling of distress." *Johnstone v. State*, 298 So. 3d 660, 665 (Fla. 4th DCA 2020). "When considering the sufficiency of the evidence, '[c]ourts apply a reasonable person standard, not a subjective standard, to determine whether an incident causes substantial emotional distress.'" *Schack*, 192 So. 3d at 628 (alteration in original) (quoting *Touhey v. Seda*, 133 So. 3d 1203, 1204 (Fla. 2d DCA 2014)). As the Fifth District explained in *D.L.D. v. State*, 815 So. 2d 746, 748 (Fla. 5th DCA 2002):

> [I]n determining whether an incident or series of incidents creates substantial emotional distress for a victim, the distress should be judged not on a subjective standard (was the victim in tears and terrified), but on an objective one (would a reasonable person be put in distress when subjected to such conduct?).

*Cash*, 306 So. 3d at 110. Substantial emotional distress is more than an ordinary feeling of distress or embarrassment. *See Shannon v. Smith*, 278 So. 3d 173 (Fla. 1st DCA 2019).

In *Cash*, this court considered a factual scenario involving two individuals living in the same condominium complex. Gagnon filed a petition for an injunction against Cash. Four incidents occurred that resulted in the trial court's grant of a final injunction against stalking. They mainly involved Cash yelling profanities at Gagnon and accusing him of lying and stealing. On appeal, we found that these incidents of yelling, profanity, and accusations did not constitute acts of stalking. However, an act of cornering the individual in an elevator while yelling and screaming at him could be a qualifying incident. 306 So. 3d at 111. As that was the only one of the many instances alleged in the petition to support an injunction against stalking, we reversed the injunction noting that section 784.048 "does not allow the trial court to enter injunctions simply 'to keep the peace' between parties who, for whatever reason, are unable to get along and behave civilly towards each other." *Id.* (quoting *Klemple v. Gagliano*, 197 So. 3d 1283, 1286 (Fla. 4th DCA 2016).

Applying these principles to the present case, we cannot conclude that the petition alleged two incidents which would qualify for a stalking injunction. In the April 26 incident, Sutton was howling like a wolf and yelling. While Fowler testified that Sutton's behavior was directed at him,

he could not recall that Sutton yelled his name. A neighbor also heard the howling but did not testify that she heard Sutton use Fowler's name. This incident, while disturbing, merely involved strange behavior and on an objective level would not cause substantial emotional distress in a reasonable person. *Cash*, 306 So. 3d at 110.

During the June 7 incident, Sutton stood on his balcony yelling profanities and epithets at Fowler who was in his condominium unit below. Like the April 26 incident, this would be insufficient to warrant a reasonable person to feel substantial emotional distress. *Cash*, 306 So. 3d at 110.

On June 8, Sutton again started screaming and yelling profanities at Fowler. The Fowlers could hear Sutton kicking his door. Fowler called 911 and the condominium management out of concern for himself, his wife, and his neighbors. Sutton then appeared at Fowler's door, banging on it. When Fowler began to open the door and then close it after realizing it was Sutton, Sutton tried to yank the door open. Fowler had to stop Sutton from entering by holding him a headlock until management came. Sutton continued yelling and cursing at Fowler. While Sutton claims on appeal that this served a legitimate purpose as Sutton wanted to know if Fowler was making complaints about him, we reject that characterization. This encounter was much more like the elevator encounter in *Cash*. Further, we think any reasonable person would suffer substantial emotional distress when an irate neighbor attempts to force himself into one's abode. The June 8 event would qualify as an incident for a stalking injunction.

These were the only incidents alleged in the petition. Two of them did not meet the requirements, leaving only one incident to support the petition. This was insufficient to support the injunction. In its ruling finding that the evidence presented warranted an injunction, the court also relied on the unpled incident of June 12. But Fowler did not amend the petition to allege this incident as an incident of harassment. Sutton properly objected to testimony on the issue as it was not pled in the complaint. He further objected in closing argument by again arguing that the incident was not in the pleading. Thus, he preserved his objection to the court relying on it to justify the injunction.

"Generally, 'courts are not authorized to grant relief not requested in the pleadings.'" *Fed. Home Loan Mortg. Corp. v. Beekman*, 174 So. 3d 472, 475 (Fla. 4th DCA 2015) (quoting *Cardinal Inv. Grp., Inc. v. Giles*, 813 So. 2d 262, 263 (Fla. 4th DCA 2002)); *see also Griffin v. Griffin*, 463 So. 2d 569, 573 (Fla. 1st DCA 1985) (noting that absent parties' stipulation,

7

consent, acquiescence, motion and order, or amendment, the issues at trial are fixed by the pleadings). "An exception to the rule requiring relief to be pled is if the issue is tried by consent of the parties." *Beekman*, 174 So. 3d at 475 (citing Fla. R. Civ. P. 1.190(b)). Rule 1.190(b) provides that:

> When issues not raised by the pleadings are tried by express or implied consent, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice the objecting party in maintaining an action or defense upon the merits.

In this case, Sutton objected both to the evidence and to the court relying on the unpled incident, and no motion was made by Fowler to amend the pleadings to conform with the evidence, without which the petition was insufficient to warrant an injunction against stalking. The issue was not tried by implied consent.

In *Shocki v. Aresty*, 994 So. 2d 1131 (Fla. 3d DCA 2008), the court addressed a similar issue on a petition for an injunction against repeat violence. There, as here, one neighbor was harassing another. The petition filed by Aresty alleged that Shocki had verbally threatened to "do something" to Aresty and his wife or their property on at least two occasions. It also alleged that Shocki banged aggressively on their common wall and also took a hammer to Aresty's barbeque grill, leaving damage. In addition, Shocki had yelled profanities at them while they were dining outside with guests. Approximately two weeks prior to the hearing on the petition, Aresty moved to supplement the petition to allege a subsequent significant incident where Shocki vandalized Aresty's car by pouring a corrosive liquid on it. This caused Aresty's wife to suffer emotional damage.

At the hearing, the evidence supported both the incident in the supplemental petition as well as the other incidents alleged. During closing argument, however, Aresty also told the court of two other

incidents which had occurred the day before the hearing.  The trial court relied in part on these unpled incidents in entering a final injunction against stalking.  Shocki appealed.

The appellate court concluded that Shocki had not been provided due process when the trial court relied on the unpled incidents described in closing argument to support the finding of stalking.  Noting that "[n]oise, profanity, and claims of vandalism to property do not always warrant injunctive relief under the stalking and repeat violence statutes," it nevertheless agreed with the trial court, "that the course of conduct between these neighbors may require intervention." *Id.* at 1134.

Here, as in *Shocki,* the trial court relied on unpled conduct in entering the final judgment of injunction.  The incident was not tried by implied consent, as Fowler never sought to amend his petition.  Because the incidents which were alleged in the petition were insufficient to warrant the entry of an injunction, the court erred in entering the final judgment. Therefore, we must reverse.

*Reversed with directions to vacate the final judgment.*

GERBER and LEVINE, JJ., concur.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**