GERBER, J.
 

 The circuit court dismissed the plaintiffs motor vehicle negligence action against the defendant. The court based its dismissal on the theories of estoppel, waiver, and election of remedies. Because the record does not support those theories, we reverse.
 

 The plaintiff stopped her vehicle at an intersection, waiting for an ambulance to pass. Her minor son sat in the front passenger seat. The defendant’s vehicle then rear-ended the plaintiffs vehicle. The police aide who investigated the accident reported that both the defendant and the plaintiff said that a third vehicle rear-ended the defendant’s vehicle, which then rear-ended the plaintiffs vehicle, and that the third vehicle left the scene. The police aide indicated he asked the parties whether they were okay, and they replied that they were.
 

 Six days after the accident, the plaintiff requested the police aide to revise his report because it did not mention that her son sat in the front passenger seat. The plaintiff did not ask the police aide to
 
 *996
 
 revise the report’s reference to a third vehicle.
 

 Seven months after the accident, the plaintiffs attorney sent the defendant’s insurer a letter seeking injury compensation from the defendant’s $100,000 liability policy. The letter stated:
 

 Our theory of liability is that [the defendant] rear ended [the plaintiff] and her son while [the plaintiff] was waiting for an ambulance to cross the intersection. Please be aware that [the plaintiff] speaks English as a second language. The investigating officer did not interrogate [the plaintiff] and got all of the information about the alleged phantom vehicle from [the defendant], [The plaintiff]
 
 never
 
 took the position that there was a phantom vehicle. As you probably know, police reports are inadmissible.
 

 It is undisputed that [the defendant’s] vehicle slammed into the rear of [the plaintiff]. It appears very unlikely that another vehicle could have slammed into [the defendant] with enough velocity to also force [the defendant] into [the plaintiff] and then still have a drivable vehicle to make a speedy ‘getaway’. There are no disinterested witnesses to support this ‘phantom vehicle’ theory. As such, it appears that the presumption of negligence of [the defendant] for rear ending [the plaintiff] cannot be overcome. It is also curious that although [the defendant] claims a phantom vehicle collided with her vehicle, she apparently could not identify the vehicle in any way to the officer,
 
 ie.,
 
 make, color, model.
 

 When the defendant’s insurer did not settle, the plaintiff sued the defendant. The complaint alleged that the defendant negligently operated her vehicle so that it collided with the plaintiffs vehicle, causing damages to the plaintiff and her son. One of the defendant’s affirmative defenses was that any damages were the result of third party negligence. During the suit’s discovery phase, the plaintiff maintained that no third vehicle was involved in the accident.
 

 While the plaintiff was pursuing the defendant, the plaintiffs attorney sent the plaintiffs uninsured motorist (UM) carrier a letter seeking injury compensation under the plaintiffs $30,000 UM policy. That letter stated, in pertinent part:
 

 An unidentified driver ... slammed into ... [the defendant] forcing a collision between [the defendant] and [the plaintiff]. The driver then sped away. Clearly, [the plaintiff] has no liability whatsoever for this accident and therefore is entitled to her uninsured motorist benefits.
 

 In response, the plaintiffs UM carrier paid the $30,000 policy limit for the plaintiffs injuries, and $5,000 for her son’s injuries.
 

 After the defendant discovered the UM letter and payment, the defendant filed a motion to dismiss for fraud on the court. The defendant relied on the conflicting letters which the plaintiffs attorney sent to the defendant’s insurer and the plaintiffs UM carrier. The plaintiff responded with an affidavit alleging: (1) there was no phantom vehicle which left the accident; (2) she did not speak to the police aide at the scene; (3) the police aide used the defendant’s version of the accident when completing the report; and (4) she did not understand the report’s reference to a third vehicle because English was her second language. The plaintiff further stated that, since the accident, she has maintained she never saw a third vehicle leave the scene.
 

 One week before the hearing on the defendant’s fraud motion, the defendant filed a supplemental motion and memorandum arguing the court should dismiss the case on the alternative basis of estoppel. According to the defendant’s view of estop-
 
 *997
 
 pel, the plaintiff could collect damages for only one theory on the same set of facts.
 

 After a brief hearing on the motion, the court stated to the plaintiffs counsel:
 

 I’m going to dismiss this case based on the estoppel argument. You’re es-topped from [alleging the defendant was liable]. You haven’t brought me anything, and by your own admission to this Court that [a phantom vehicle] was the basis of your UM claim by which you gained substantial compensation for.
 

 The court then stated to the defendant’s counsel:
 

 I’m not finding fraud, I’m finding that they are estopped. I’d have to have a hearing on the fraudulent issue, and I didn’t have enough time for that. I’m making that ruling based upon ... the doctrine of waiver and estoppel.
 

 The court later entered a final judgment which stated, in pertinent part:
 

 The Plaintiff is legally barred from two (2) recoveries for the same claim, for the same loss, on the same set of facts. She has chosen and elected her remedy and collected on same. The factual setting justifies the application of the doctrine of waiver and estoppel.
 

 On appeal, the plaintiff argues the court erred in dismissing the case on the theories of estoppel, waiver, and election of remedies. We have a mixed standard of review. “To the extent the trial court’s order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.”
 
 Foreclosure FreeSearch, Inc. v. Sullivan,
 
 12 So.3d 771, 774 (Fla. 4th DCA 2009) (citation omitted).
 

 We find the trial court erred as a matter of law in applying the theories of estoppel, waiver, and election of remedies. We will address each in turn. Because the trial court’s reference to estoppel was non-specific, we will address both equitable estop-pel and judicial estoppel.
 

 “Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position!.]”
 
 Fla. Dep’t of Health & Rehab. Servs. v. S.A.P.,
 
 835 So.2d 1091, 1096 (Fla. 2002) (citation omitted). “The elements of equitable estoppel are ‘(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.’”
 
 Curd Village Condo. Ass’n v. Maria,
 
 14 So.3d 1175, 1177 (Fla. 4th DCA 2009) (quoting
 
 State v. Hams,
 
 881 So.2d 1079, 1084 (Fla.2004)). The defendant’s evidence satisfied the first element, but not the second and third elements. Although the defendant presented evidence of the plaintiffs alleged contrary representations regarding the third vehicle’s existence or lack thereof, the defendant did not present evidence that she relied on those representations or that she detrimentally changed her position because of any such reliance.
 

 “Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings.”
 
 Blumberg v. USAA Cas. Ins. Co.,
 
 790 So.2d 1061, 1066 (Fla. 2001) (citation omitted). The elements of judicial estoppel are the same as equitable estoppel, with the added elements of successfully maintaining a position in one proceeding, while taking an inconsistent position in a later proceeding, in which the same parties and questions are involved.
 
 Id.
 
 Here, there have been no separate judicial proceedings. The recipients of the letters were not the same. And, as stated above, the second and third elements of equitable estoppel have not been satisfied.
 

 
 *998
 
 “Waiver is ‘the intentional relinquishment of a known right.’ ” WSG
 
 W. Palm Beach Dev., LLC v. Blank,
 
 990 So.2d 708, 715 (Fla. 4th DCA 2008) (citations omitted). “Breaking down waiver into elements, this court has recognized that three circumstances give rise to a waiver: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. Proof of these elements ‘may be express, or implied from conduct or acts that lead a party to believe a right has been waived.’ ”
 
 LeNeve v. Via S. Fla., L.L.C.,
 
 908 So.2d 530, 535 (Fla. 4th DCA 2005) (citations omitted). Although the first two elements exist here, the third element does not. The fact that the plaintiff sought compensation from her UM carrier does not imply that she intended to relinquish her right to seek compensation from the defendant.
 

 The purpose of the election of remedies doctrine “is to ‘prevent double recoveries for a single wrong.’ ”
 
 Ehrman v. Mann,
 
 979 So.2d 1011, 1012 (Fla. 4th DCA 2008) (citation omitted). “Under Florida law, however, the election of remedies doctrine applies only where the remedies in question are coexistent and inconsistent.”
 
 Id.
 
 (citations omitted). That is, “[i]f the allegations of facts necessary to support one remedy are substantially inconsistent with those necessary to support the other, then the adoption of one remedy waives the right to the other.”
 
 Id.
 
 Here, the remedies of the defendant’s liability coverage and the plaintiffs UM coverage are not inconsistent. UM coverage does not necessarily duplicate liability coverage.
 
 See
 
 § 627.727(1), Fla. Stat. (2008) (uninsured and underinsured vehicle coverage “shall be over and above, but shall not duplicate, the benefits available to an insured under any ... motor vehicle liability insurance coverage ... and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained.... The amount of [UM] coverage ... shall not be reduced by a setoff against any coverage, including liability insurance.”).
 

 The defendant argues we should employ the “tipsy coachman” rule and affirm on the ground that the plaintiff committed a fraud on the court. Under the tipsy coachman rule, “if a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support judgment in the record.”
 
 Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644 (Fla. 1999). However, an appellate court cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue and it would be inappropriate for an appellate court to do so.
 
 See Bryant v. Fla. Parole Comm’n,
 
 965 So.2d 825, 825 (Fla. 1st DCA 2007) (declining to employ tipsy coachman rule). Here, because the lower court did not make factual findings on the defendant’s fraud argument, it would be inappropriate for us to consider that argument in this appeal.
 

 On remand, an evidentiary hearing on the defendant’s fraud argument is required, as the lower court recognized.
 
 Villasenor v. Martinez,
 
 991 So.2d 433, 436 (Fla. 5th DCA 2008) (meeting burden of establishing fraudulent conduct warranting dismissal by clear and convincing evidence “will almost always require an evidentiary hearing”). It would be premature for us to express any opinion on the admissibility of evidence or possible outcomes of that hearing.
 

 Reversed and remanded.
 

 POLEN and STEVENSON, JJ., concur.