DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ABEL B. GARCIA,**
Appellant,

v.

**OLGA C. SOTO,**
Appellee.

No. 4D21-661

[April 20, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Renatha S. Francis, Judge; L.T. Case No. 502020DR006626XXXXMB.

Troy William Klein of the Law Office of Troy W. Klein, P.A., West Palm Beach, for appellant.

Kent D. Huffman of Hutchinson & Huffman, P.A., West Palm Beach, and Kara Rockenbach Link of Link & Rockenbach, PA, West Palm Beach, for appellee.

WARNER, J.

In entering a final judgment of injunction for protection against stalking, the trial court found two episodes of stalking sufficient to satisfy a pattern of conduct. Because we conclude that those incidents do not constitute a pattern of harassment under the relevant statute, we reverse the final judgment.

Appellee, Soto, petitioned for an injunction for protection against stalking, alleging that appellant, Garcia, had engaged in multiple acts of stalking. After the trial court denied the petition for a temporary injunction, Soto filed an eleven-page supplemental affidavit in which Soto detailed her entire relationship with Garcia. In brief, Soto began dating Garcia after her husband died, but the relationship soon soured, because Garcia appeared possessive and demanded money from her. After they broke up, Soto began seeing another man, and Garcia began to make threats. The affidavit detailed incidents involving her automobile business and home, including theft of cars and electrical interruptions which she

attributed to Garcia. Some specific incidents where Garcia was present were also included.

At the final hearing on the petition, Soto's attorney brought the affidavit to the attention of the court, which said it would take notice of the affidavit and asked counsel to elicit testimony as to a few of the more recent incidents. Counsel then asked Soto about even more recent incidents, not included in the affidavit, but the court interrupted and asked for clarification. Soto then began to relate various incidents, such as FPL disconnecting electricity at her business, which she suspected was instigated by Garcia, but admitted that she did not know for sure. Counsel then directed Soto to testify regarding other incidents.

Soto then recounted an incident which occurred at a local restaurant in January 2020. She and her boyfriend went to dinner at a restaurant, and Garcia was at the same restaurant. Garcia came to her table four times, as he also knew the boyfriend who was his former employee. The first time Garcia came over to her table, Soto was up dancing. When she came back, her wine tasted funny, so she did not drink it. The second time Garcia came over, he spoke to her boyfriend, saying "he cleaned up well." The third time, Garcia again mumbled something to the boyfriend saying something like "you look good." He came back a fourth time. Soto never told him to go away, nor did she speak with him.

As Soto and her boyfriend were leaving the restaurant, someone sprayed her boyfriend in the face with pepper spray. Someone else approached Garcia and took her purse. The police were called and were told that the boyfriend attacked a bouncer, and he was arrested.

In April 2020, Soto and her boyfriend were at a Home Depot returning some merchandise. Soto stayed in their car, while the boyfriend went into the store. She testified that Garcia approached her boyfriend and told him that he had planned the "[restaurant] thing," because he saw the boyfriend with Soto. Garcia then made some statements about how he treated women badly. Soto attempted to show the court a text image from Garcia that she said depicted an image showing her boyfriend's address and some message, but the court commented that it was impossible to read.

After presentation of this evidence, the court offered Garcia the opportunity to testify. Garcia denied that he had admitted staging the restaurant incident when he saw Soto's boyfriend at the Home Depot or that he had talked to Soto there. Soto's counsel then clarified Soto's testimony, noting that the statements made in the parking lot were statements made to the boyfriend, not to Soto, although Soto was present

2

and heard them.

At the end of the testimony, the court ruled. After stating the definition of harassment as engaging in a course of conduct that causes substantial emotional distress serving no legitimate purpose, the court found that Soto's testimony that she was nervous and "uncomfortable and all of this stuff" was evidence of substantial emotional distress. The court relied on the incidents in January at the restaurant and in April at the Home Depot to establish a course of conduct. As to the January incident in the restaurant, the court found that Garcia's appearance at the table four times constituted a continuity of purpose. Although short, this constituted a pattern of conduct under the statute. As to the April incident, the court believed Soto that Garcia did have a conversation with the boyfriend at the Home Depot and that Garcia admitted to planning the attack at the restaurant. The court did not mention any of the other incidents to which Soto testified. Based upon these findings it entered a judgment of injunction. Garcia brings this appeal.

"Trial courts have broad discretion in granting . . . injunctions, and unless a clear abuse of discretion is demonstrated, appellate courts will not disturb the trial court's decision." *DiTanna v. Edwards*, 323 So. 3d 194, 200 (Fla. 4th DCA 2021) (quoting *Hobbs v. Hobbs*, 290 So. 3d 1092, 1094 (Fla. 1st DCA 2020)) (internal quotation marks omitted). "But the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law" reviewed de novo. *Cash v. Gagnon*, 306 So. 3d 106, 109 (Fla. 4th DCA 2020) (quoting *Krapacs v. Bacchus*, 301 So. 3d 976, 978 (Fla. 4th DCA 2020)).

Section 784.048, Florida Statutes (2020), defines stalking as the "willful[ ], malicious[ ], and repeated[ ] follow[ing], harass[ing], or cyberstalk[ing of] another person." *DiTanna*, 323 So. 3d at 201 (quoting *Lopez v. Lopez*, 922 So. 2d 408, 410 (Fla. 4th DCA 2006)). Section 784.048(1) defines the components of stalking as follows:

> (a) "Harass" means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose.

"In turn, the statute defines a 'course of conduct' as 'a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose.'" *DiTanna*, 323 So. 3d at 201 (quoting § 784.048(1)(b), Fla. Stat. (2020)).

"In order to be entitled to a stalking injunction two separate instances

of stalking must be proven by competent substantial evidence." *Id.* "Each incident of stalking must be proven by competent, substantial evidence to support an injunction against stalking." *Touhey v. Seda*, 133 So. 3d 1203, 1204 (Fla. 2d DCA 2014). "Two or more acts that are part of one continuous course of conduct are legally insufficient to qualify as separate instances of harassment." *Cash*, 306 So. 3d at 109 (citing *Packal v. Johnson*, 226 So. 3d 337, 338 (Fla. 5th DCA 2017). "A course of conduct requires multiple acts that are separated by time or distance." *Id.* (citing *Levy v. Jacobs*, 69 So. 3d 403, 405 (Fla. 4th DCA 2011)).

To qualify as stalking, the conduct must cause substantial emotional distress and serve no legitimate purpose. *Id.* at 110. "When considering the sufficiency of the evidence, '[c]ourts apply a reasonable person standard, not a subjective standard, to determine whether an incident causes substantial emotional distress.'" *David v. Schack*, 192 So. 3d 625, 628 (Fla. 4th DCA 2016) (quoting *Touhey*, 133 So. 3d at 1204). "[T]he defendant's conduct must cause substantial emotional distress, which is greater than just an ordinary feeling of distress." *Johnstone v. State*, 298 So. 3d 660, 665 (Fla. 4th DCA 2020). "Mere irritation, annoyance, embarrassment, exasperation, aggravation, and frustration, without more, does not equate to 'substantial emotional distress.'" *Id.* at 669 (Klingensmith, J., dissenting).

In this case, the trial court classified Garcia approaching Soto and her boyfriend at the restaurant as four separate acts of stalking. We disagree, as they were part of one "continuous course of conduct," which would constitute one instance of stalking, not four.

Nevertheless, even if they were separate incidents, they do not constitute stalking, because they would not be of a nature to cause a reasonable person substantial emotional distress, even if Garcia's approach was an annoyance. No testimony was received that Garcia threatened Soto or caused a scene. Instead, it appears that he was speaking mostly to the boyfriend. No harsh words were even exchanged. These incidents do not constitute a course of conduct of stalking.

The attack outside the restaurant is more concerning and would constitute an act of harassment if it had been perpetrated by Garcia. Although the physical violence was leveled against the boyfriend and not Soto, Soto's purse was stolen—grabbed from her person. Being the victim of such an attack would cause more than ordinary emotional distress in a reasonable person.

The court relied on the encounter at the Home Depot store in its ruling,

4

although it is not clear whether it considered this a separate incident of harassment.  That incident, as well, would not cause a reasonable person substantial emotional distress.   Garcia had a conversation with the boyfriend, admitting that he planned the incident outside the restaurant where the boyfriend was pepper sprayed.  He did not talk to Soto, and no harsh words were exchanged.  Soto testified that some sort of disturbing text was sent to the boyfriend, but the court disregarded this because it was unreadable.  As this was simply a "confirmation" of a prior act of harassment, it was not a separate instance of stalking.  Indeed, it may also have served a legitimate purpose because Garcia admitted culpability for the prior incident.

Because the court relied on these incidents alone to justify the issuance of the final judgment of injunction, the judgment was not supported by competent substantial evidence of stalking, because only one incident met the statutory requirements.  In her brief, Soto relies on a multitude of other incidents contained in her supplemental affidavit to support her claim of stalking and her emotional distress, contending that the court took "judicial notice" of the affidavit.  The court could not take judicial notice of its contents.  *See* § 90.202(11)–(12), Fla. Stat. (2021).  A matter judicially noticed must be of common and general knowledge.  *Nielsen v. Carney Groves, Inc.*, 159 So. 2d 489, 491 (Fla. 2d DCA 1964); *see also Wyatt v. State*, 270 So. 2d 47 (Fla. 4th DCA 1972) (defining judicial notice as "the cognizance of certain facts which judges and jurors may properly take and act upon without proof, because they already know them" (quoting *Mitchum v. State*, 251 So. 2d 298, 300 (Fla. 1st DCA 1971)).  Judicial notice "may not be used to dispense with proof of essential facts that are not judicially cognizable."  *McDaniels v. State*, 388 So. 2d 259, 260 (Fla. 5th DCA 1980).  Clearly, the incidents described in Soto's affidavit were part of the proof of essential facts and were not facts of common or general knowledge.  The incidents could not be judicially noticed.

Regardless, the court did not rely on any of the incidents described in the affidavit and made no findings on any of incidents.  Because these are evidentiary facts, the dissent's reliance on the tipsy coachman doctrine is misplaced.  "[A]n appellate court cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue and it would be inappropriate for an appellate court to do so."  *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009).

The final judgment is not supported by competent substantial evidence.  The incidents relied on by the court did not constitute a course of conduct causing substantial emotional distress as required by statute.  We reverse and direct that the judgment be vacated.

*Reversed.*

GROSS, J., concurs.
ARTAU, J., dissents with opinion.

ARTAU, J., dissenting.

I respectfully dissent because the appellant failed to object to the admissibility of the supplemental affidavit which described several incidents constituting either the "following" or "harassing" forms of stalking as defined in section 784.048(2), Florida Statutes (2020). The supplemental affidavit, together with the testimony presented by the appellee at the hearing, provided the trial court with competent substantial evidence of two or more acts that would constitute either form of stalking sufficient to support issuance of the injunction.

Before presenting any testimony, counsel for the appellee announced that he wished to move the supplemental affidavit into evidence in view of the court's limited time to consider in-person testimony at the evidentiary hearing. The appellant did not object. The trial court agreed that, as scheduled, there was insufficient time for the appellee to testify as to "everything" in the supplemental affidavit, and directed counsel to present testimony from the appellee only as to "a couple of the more recent incidents." The trial court then inartfully ruled that it would "take notice" of the supplemental affidavit.

"In order to preserve an evidentiary ruling for appellate review, a contemporaneous objection on the specific legal ground raised on appeal must be made in the trial proceedings, and the objecting party must obtain a ruling by the trial court for the appellate court to review." *Ham v. Nationstar Mortg., LLC*, 164 So. 3d 714, 717 (Fla. 1st DCA 2015). The appellant's failure to object to the admissibility of the supplemental affidavit, and failure to request a definitive ruling excluding the affidavit from the trial court's consideration as evidence, precludes the appellant from taking the position that the supplemental affidavit is not a part of the record that can be considered in determining that the appellee presented sufficient evidence to support issuance of the injunction.

In discussing the harassing form of stalking, the majority intimates that all forms of stalking require conduct that causes substantial emotional distress and serves no legitimate purpose. However, such an interpretation of the stalking statute ignores the Florida Legislature's use of the disjunctive "or" in providing for different forms of stalking. *See* §

6

748.048(2), Fla. Stat. (2020) ("A person who willfully, maliciously, and repeatedly follows, harasses, *or* cyberstalks another person commits the offense of stalking[.]" (emphasis added)).

While all forms of stalking—inclusive of "following"—require evidence that the conduct be done "repeatedly" with "malicious" and "willful" intent, only the "harassing" and "cyberstalking" forms of stalking carry the additional requirement that the conduct causes "substantial emotional distress" and serves "no legitimate purpose." *See Klemple v. Gagliano*, 197 So. 3d 1283, 1285-86 (Fla. 4th DCA 2016) (explaining the different elements required to prove stalking under the "following" and "harassment" prongs of section 784.048); *see also Santiago v. Leon*, 299 So. 3d 1114, 1117-20 (Fla. 3d DCA 2020) (concluding that while the "following" form of stalking must be conduct amounting to "willful, malicious and repeated 'following[,]'" it is the "harassing" and "cyberstalking" forms of stalking that must amount to conduct that causes "substantial emotional distress" and serves "no legitimate purpose" (quoting § 784.048(1)(a) & (1)(d)1.–2., Fla. Stat. (2017)). Moreover, "[w]hether the conduct meets the statutory requirement [to constitute stalking] is a question of fact for the trier of fact." *Biggs v. Elliot*, 707 So. 2d 1202, 1202 (Fla. 4th DCA 1998).

The majority correctly points out that the trial court does not appear to have based its ruling on the incidents described in the supplemental affidavit. However, under the tipsy coachman rule, when a "trial court reaches the right result, but for the wrong reasons," its judgment "will be upheld if there is any basis which would support the judgment in the record." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644-45 (Fla. 1999); *see also Applegate v. Barnett Bank*, 377 So. 2d 1150, 1152 (Fla. 1979) ("Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it.").

The majority's reliance on *Bueno v. Workman*, 20 So. 3d 993 (Fla. 4th DCA 2009), as preventing application of the tipsy coachman rule here is misplaced. *Bueno* correctly rejected an argument that a lower court's erroneous dismissal of a case on theories of estoppel, waiver, and election of remedies could be upheld under the tipsy coachman rule because the plaintiff had "committed a fraud on the court." *Id.* at 998. *Bueno* explained that "it would be inappropriate" to "employ the tipsy coachman rule where [the] lower court [had] not made factual findings on [the fraud] issue[.]" *Id.* Unlike *Bueno*—where the lower court had not made any finding of fraud— the trial court here made its factual finding of stalking, but did not recite sufficient facts from the record when it explained its reasoning for the

finding of stalking.  *See Delivorias v. Delivorias*, 80 So. 3d 352, 353-55 (Fla. 1st DCA 2011) (distinguishing *Bueno* and "those cases in which the 'tipsy coachman' doctrine was deemed inapplicable [because] the trial court failed to make findings of fact" on an issue, from cases in which the tipsy coachman doctrine should be applied because a factual finding was made on an issue "and competent substantial evidence in the record supports the result, but the trial court failed to explain its reasoning").

Moreover, the statute creating a cause of action for an injunction against stalking does not require a trial court to provide any reasons for its finding of stalking.  *See* § 784.0485(6)(a), Fla. Stat. (2020) ("Upon notice and hearing, when it appears to the court that the petitioner is the victim of stalking, the court may grant such relief as the court deems proper, including an injunction[.]").  Accordingly, we would have no legal basis to reverse an injunction that is supported by competent substantial evidence in the record simply because the trial court did not provide any reasons for its finding of stalking.  Likewise, we should not reverse this injunction simply because the trial court did not provide enough reasons for its finding of stalking.  *See Lukacs v. Luton*, 982 So. 2d 1217, 1221 (Fla. 1st DCA 2008) ("Although the trial court did not base its ruling on the [correct] analysis," we may affirm where "the facts established below show that appellant committed an act of stalking, and the trial court found appellant committed such an act[.]").

Thus, the tipsy coachman rule should be applied to affirm the trial court's injunction because it was supported by competent substantial evidence in the record that the appellant committed two or more acts that would constitute either the "following" or "harassing" forms of stalking.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***